142 F.3d 441
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Roosevelt WILLIAMS Plaintiff-Appellant,
v.
Michael T. SCOTT, et al., Defendants-Appellees.
 No. 97-1223.
 United States Court of Appeals,
Seventh Circuit.
 .
Submitted Mar. 26, 1998*.
Decided Mar. 27, 1998.
 
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division. No. 94 C 639 Robert L. Miller, Jr., Judge.
 Before Hon. JOEL M. FLAUM, Hon. MICHAEL S. KANNE, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Roosevelt T. Williams, an inmate at the Maximum Control Complex (MCC) located in Westville, Indiana, brought a pro se action pursuant to 42 U.S.C. § 1983 against four Indiana Department of Correction (IDOC) employees. Williams alleged that his First Amendment, Eighth Amendment, and Fourteenth Amendment rights were violated when he was placed on restrictive medical separation status after he refused to take a tuberculosis ("TB") test due to his Muslim religious beliefs. The district court granted summary judgment for the defendants and Williams appeals. We affirm.
 
 
 2
 In the Fall of 1993, the IDOC, in consultation with the Indiana Board of Health, determined that all inmates and staff at the MCC would be tested for TB because an outbreak occurred at another correctional institution. According to Williams's complaint, on or about September 27, 1993,[1] he was asked to submit to a Mantoux TB test, also known as a purified protein test. A Mantoux test is conducted by injecting a person with a protein derivative that causes a visible reaction to occur on the skin within about two days if the person has been exposed to tuberculosis. Williams refused to take the test, stating that the injection of an unnatural substance into his body violated his Muslim religious beliefs. Williams offered to have a chest x-ray taken, which would indicate whether he had active tuberculosis. However, a chest x-ray would not reveal if he had tuberculosis which was not currently active and contagious. On September 28, 1993. Williams, along with at least 13 other individuals who had refused the test, were moved to a medical separation unit. Williams asserts that while he was in the separation unit he was at greater risk of contracting TB, and was denied regular visits, phone calls, showers, and out-of-cell recreation. The IDOC sought and obtained a state court order requiring Williams to submit to the Mantoux TB test. On October 15, 1993, Williams was escorted from his individual cell to the recreation area where he again refused to take the test. Prison employees then administered the test against his will pursuant to the state court order. On October 18, 1993, it was determined that Williams was negative for TB. Although the record is not entirely clear on what exact day Williams was released from medical segregation it appears that it was either shortly before or after he was determined not to have TB.[2]
 
 
 3
 This court reviews a district court's grant of summary judgment de novo and views the record in the light most favorable to the non-moving party. Vector-Springfield Properties, Ltd. v. Central Ill. Light Co., Inc., 108 F.3d 806, 809 (7th Cir.1997) (citing Fed.R.Civ.P. 56(c)). The mere existence of some alleged factual dispute is insufficient to defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
 
 
 4
 On appeal. Williams does not press his due process claim and did not raise his access to the law library claim until his reply brief, therefore these claims are waived. Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 597 (7th Cir.1997) (arguments not presented in initial brief on appeal are waived), cert. denied, --- U.S. ----, 118 S.Ct. 1052, 140 L.Ed.2d 115, 66 U.S.L.W. 3459 (U.S. Feb. 23, 1998) (No. 97-1082). Williams also failed to raise in his appellate brief, and therefore waived, his Eighth Amendment claim with respect to the conditions of confinement in medical segregation, such as lack of showers and out-of-cell recreation.[3] Id. However, he does preserve the issue that his Eighth Amendment rights were violated by being exposed to an increased risk of contracting TB. Williams merely stated in his complaint and response to the summary judgment motion that his Fourteenth Amendment right was violated. In his brief on appeal he argues, albeit vaguely, that his right to equal protection was violated, apparently because he believes that only Muslims were placed in medical segregation for refusing to take the TB test. (Appellant Br. at 8-9, 11; Id. at 9 ("Petitioner and other Muslim[s] become singled-out").) Liberally construing Williams's pleading, as we must, this court will consider the claim. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Therefore the issues raised by Williams in this appeal are that his First Amendment right to the free exercise of religion. Fourteenth Amendment right to equal protection, and Eighth Amendment right to be free from cruel and unusual punishment were violated by the defendants.
 
 
 5
 The district court properly determined that Williams was not entitled to injunctive and declaratory relief because he brought his claim almost a year after he was tested for TB against his will and did not allege in his complaint that he was currently under any threat of receiving another TB test or being placed in a medical segregation unit for refusing to submit to a future test. Therefore, Williams's claims are analyzed solely for monetary relief.
 
 
 6
 The district court properly held that any challenges relating to the involuntary testing of Williams pursuant to the state court order were barred by the Rooker-Feldman doctrine. Newman v. Indiana, 129 F.3d 937, 942 (7th Cir.1997). Williams is asking this court to reverse the state court's order authorizing the involuntary testing of Williams. Under the Rooker-Feldman doctrine the federal district and appellate courts lack jurisdiction to review claims that are inextricably intertwined with a state court ruling. Kamilewicz v. Bank of Boston Corp., 92 F.3d 506, 509-10 (7th Cir.1996), cert. denied, 520 U.S. 1204, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997). Therefore, we lack jurisdiction to consider Williams's First Amendment claim. Further, even if we were to analyze this case under the Religious Freedom Restoration Act. 42 U.S.C. § 2000bb-1(b) (RFRA), as the district court did, the Supreme Court determined that RFRA was unconstitutional while this appeal was pending. City of Boerne v. Flores, 521 U.S. 507, ----, 117 S.Ct. 2157, 2160, 138 L.Ed.2d 624 (1997).
 
 
 7
 Williams next argues that his right to equal protection was violated. Although the district court only analyzed whether his due process rights were violated, we consider his equal protection claim because his complaint stated that his Fourteenth Amendment rights were violated and he submitted facts consistent with an equal protection claim. On the record before us, it is clear that this claim cannot survive summary judgment. The placement of Williams in medical segregation on the basis of his religion, a suspect classification, would require that it be analyzed under the strict scrutiny standard. Zehner v. Trigg, 133 F.3d 459, 463 (7th Cir.1997). However, the prison administration's decision to place Williams and other Muslims in medical separation was not based on their religion, but on the fact that they refused to take the TB test. Because the medical separation was based on a non-suspect classification, the government need only show that its decision was rationally related to a legitimate governmental interest. Id. The government clearly meets this test, as the removal of prisoners who refuse to test for TB from general population is rationally related to the legitimate governmental interest of protecting other prisoners from an outbreak of TB.
 
 
 8
 Lastly, Williams asserts that his Eighth Amendment rights were violated because he was placed in the medical separation unit where he argues there were individuals who had tested positive for TB, thereby increasing his chances of contracting TB and causing emotional distress. The Eighth Amendment is violated when confinement conditions are objectively sufficiently serious to be considered cruel and unusual and the defendants acted with deliberate indifference towards the inmate's health or safety. Babcock v. White, 102 F.3d 267, 270-71 (7th Cir.1996). Eighth Amendment protection also extends to conditions that threaten to cause health problems in the future, as well as current serious health problems. Helling v. McKinney, 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). According to the declaration of Nursing Supervisor Karen Henrich, no inmates have had active tuberculosis at MCC. (Appellee's Br., Supp.App. at 6.) Although Henrich was not employed by MCC until August 1994, she has access to MCC information relating to TB test results because her job duties include maintaining medical records. Williams failed to present any admissible evidence that there were inmates in the medical separation unit with him that had active TB. Fed.R.Civ.P. 56(e). Further, even if we accept Williams's assertions as the district court apparently did, inmates in both the medical separation unit and in general population had tested positive for TB. Therefore, Williams failed to demonstrate that he was at greater risk of contracting TB while in the medical separation unit and does not establish the objective prong of the Eighth Amendment.
 
 
 9
 The district court concluded that Williams's Eighth Amendment claim for mental or emotional distress from the risk of exposure to TB was not cognizable because he failed to make "a prior showing of physical injury," as required by 42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act (PLRA). Although the PLRA was enacted after Williams's case was filed, he has waived review of whether retroactive application of the PLRA is proper by failing to raise this issue on appeal. Zehner, 133 F.3d at 460. Therefore, summary judgment was appropriate on Williams's Eighth Amendment claim with respect to mental distress caused by an alleged increased risk of contracting TB.
 
 
 10
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 Defendants assert that Williams's refusal to take the test actually occurred on September 10, 1997. However, Williams's Medical Treatment and Progress Report indicates that he refused the test on both dates. (R. 67, attachment.)
 
 
 [2]
 Williams alleges in his complaint that he was held in isolation for 24 days (until October 21), (R. 5, Complaint at attached continuation of page 8), while the defendants assert that he was released on October 12, (Appellants' Br. at 4, Short App. at 2), and the district court found that he was released on October 18, apparently because Williams was determined to be negative for TB on that day
 
 
 [3]
 Although this claim is waived, it is interesting to note that this is the same Williams, who "refused to shower from March 1992 to July 1992," and brought an action against prison employees for forcible showers. Williams v. Scott, No. 96-2184, 116 F.3d 1483 (7th Cir. June 5, 1997) (appeal determined to be frivolous and a strike under the PLRA) (unpublished order)